**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CHEVRON CORPORATION § | |
| and ACS HR SOLUTIONS, LLC § | |
| as Subrogee of Chevron Corporation § | |
| and the Chevron Retirement Plan, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-07-3257 |
| § | |
| RICHARD L. BARRETT, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

ACS HR Solutions, LLC ("ACS") sued Richard L. Barrett, seeking equitable restitution of overpaid ERISA pension benefits under 29 U.S.C. § 1132(a)(3). During his career as an engineer, Barrett accrued pension benefits under several different retirement plans, each maintained by a different employer. When he retired in 2003, Barrett received a lump-sum payment of $469,446.47 from the Chevron Retirement Plan. This amount erroneously included benefits that Barrett had accrued for 22.9167 years of service under the Texas–New Mexico Retirement Plan. Barrett also received a lump-sum payment from the Shell Oil Company Retirement Plan that included benefits that accrued for his 22.9167 years of service under the Texas–New Mexico Retirement Plan. ACS asserts that Barrett "received

double retirement benefits for his service" under the Texas–New Mexico Retirement Plan and seeks to recover the overpayment of $445,372.99. (Docket Entry No. 1 at 3).

Barrett moved to dismiss ACS's claim for lack of subject-matter jurisdiction, asserting that ACS has no standing to sue under 29 U.S.C. § 1132(a)(3). (Docket Entry No. 9). ACS responded, (Docket Entry No. 14), and Barrett replied, (Docket Entry No. 15). On April 15, 2008, this court held a hearing at which the parties presented arguments on Barrett's motion to dismiss. At the hearing, this court granted ACS leave to file an amended complaint to add or substitute Chevron Corporation ("Chevron") as a party and to file a surreply to Barrett's motion to dismiss. (Docket Entry No. 22). ACS subsequently filed an amended complaint adding Chevron as a party. (Docket Entry No. 25). ACS also filed a surreply to Barrett's motion to dismiss. (Docket Entry No. 26). Barrett responded to ACS's surreply. (Docket Entry No. 27).

Based on the motion, responses, and replies; the arguments of counsel; the record; and the applicable law, this court denies Barrett's motion to dismiss. The reasons are explained below.

I.  **Background**

Barrett worked for the Texas–New Mexico Pipe Line Company from 1975 to 1990. In 1990, he transferred to the Texaco Pipe Line Company, where he worked until 1999. During his employment from 1975 to 1999, Barrett accrued 22.9167 years of retirement

benefits under the Texas–New Mexico Retirement Plan and 1.25 years of retirement benefits under the Texaco Retirement Plan.

On April 1, 1999, Barrett's employment was transferred to the Equilon Pipeline Company, a joint enterprise of Texaco and Shell Oil Company. Following his transfer to the Equilon Pipeline Company, the plan assets and accrued plan benefits of the Texas–New Mexico Retirement Plan, including Barrett's 22.9167 years of accrued benefits, were transferred to the Shell Oil Company Retirement Plan. During his employment with Equilon Pipeline, Barrett accrued retirement benefits under the Shell Oil Company Retirement Plan but did not accrue retirement benefits under the Texaco Retirement Plan.

In July 2002, the Texaco Retirement Plan was merged into the ChevronTexaco Retirement Plan. On July 1, 2005, the ChevronTexaco Retirement Plan was restated and renamed the Chevron Retirement Plan, which is the successor to both the Texaco Retirement Plan and the ChevronTexaco Retirement Plan.[1] Chevron Corporation is the Chevron Retirement Plan's administrator. ACS provides record-keeping services for the Chevron Retirement Plan.

Barrett retired in 2003 and applied for benefits from the ChevronTexaco Retirement Plan. ACS arranged for the ChevronTexaco Retirement Plan to pay Barrett a lump-sum retirement amount. On October 31, 2003, Barrett was due retirement benefits amounting to

---

[1] The briefs, and this opinion, refer to the "ChevronTexaco Retirement Plan" and the "Chevron Retirement Plan" interchangeably.

$24,073.48 from the ChevronTexaco Retirement Plan for 1.25 years of service accrued under the former Texaco Retirement Plan. Due to an administrative error, he received a lump sum payment of $469,446.47. This amount incorrectly included credit for service that Barrett accrued under the Texas–New Mexico Retirement Plan. Barrett also received payment from the Shell Oil Company Retirement Plan for retirement benefits accrued under the Texas–New Mexico Retirement Plan. Chevron and ACS assert that Barrett received an overpayment of $445,372.99 because he "improperly received double retirement benefits for his service." (Docket Entry No. 25 at 4).

ACS sued Barrett to recover the overpayment. ACS sued as the subrogee of Chevron Corporation and the Chevron Retirement Plan. (Docket Entry No. 1). Barrett moved to dismiss on the ground that ACS is not a "fiduciary" with standing to sue under 29 U.S.C. § 1132(a)(3). This court granted ACS leave to amend its complaint to add or substitute Chevron as a party. (Docket Entry No. 22). ACS filed an amended complaint adding Chevron as a party. (Docket Entry No. 25). In its surreply to Barrett's motion to dismiss, ACS asserted that it qualifies as a fiduciary with standing to assert claims under ERISA but that Chevron is also joining the suit as a party "for the avoidance of doubt." (Docket Entry No. 26 at 3).

Barrett responded to ACS's surreply, arguing that Chevron and ACS's amended complaint "cannot supply jurisdiction where none attached as of date of filing on October 3,

2007." (Docket Entry No. 27 at 5). Barrett also argues that the ChevronTexaco Retirement Plan does not apply to him.[2]

## II. The Legal Standard for Motions to Dismiss under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial

---

[2] Barrett asserts as affirmative defenses estoppel, the Texas statute of limitations, and laches. These defenses address matters beyond the jurisdictional question before this court and are not ripe for decision.

authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997).

## III. Analysis

Section 1132(e)(1) of ERISA states that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." Section 1132(a)(3) allows a fiduciary to bring a civil action to obtain "appropriate equitable relief" to enforce the terms of an ERISA plan. The parties dispute whether ACS is a fiduciary under ERISA and whether ACS and Chevron seek equitable relief.

### A. Is ACS a Fiduciary?

In arguing that ACS is not a fiduciary with standing to sue under ERISA, Barrett points out that the Chevron Retirement Plan designates a plan administrator to serve as the plan's fiduciary; ACS was not the named plan administrator on the date it sued Barrett; ACS's original complaint "does not show the [ChevronTexaco Retirement Plan] authorized anyone other than the Plan Administrator to serve as the *Fiduciary* under the *Plan*"; and that the plan administrator is not a party to this lawsuit.[3] (Docket Entry No. 9 at 2). Although

---

[3] Barrett also argues that the ChevronTexaco Retirement Plan "specifically excluded" him and "cannot be the predicate for jurisdiction in this ERISA lawsuit." (Docket Entry No. 27 at 11). Barrett points out that the ChevronTexaco Retirement Plan states that "[e]xcept as otherwise specifically provided herein, the provisions of this amended and restated plan text shall apply only to individuals who are Employees on or after July 1, 2002." (Docket Entry No. 14, Appendix at 11). The ChevronTexaco Retirement Plan further states:

6

ACS asserts in its original complaint that it is a subrogee of Chevron and the Chevron Retirement Plan, Barrett contends that "[t]here is no reference in Section 502 of ERISA to a 'subrogee' or any place in the Statute to confer the status of a Fiduciary upon a 'subrogee.'" (*Id.* at 3). Barrett also points out that the subrogation agreement between Chevron and ACS "does not mention the word 'fiduciary' or appoint ACS as [Chevron's] fiduciary." (Docket Entry No. 16 at 10).

ACS responds that it "has been properly designated by Chevron and the Chevron Retirement Plan to pursue this action to recover funds in the possession of the Defendant that

---

> Except as otherwise provided in a subsequent amendment or restatement of the relevant plan text, the benefits payable under this Plan to any individual who ceased to be an Employee prior to July 1, 2002, and the benefits payable under this Plan to any individual who ceased to be an Employee prior to July 1, 2002, and the benefits payable under the Texaco Plan or the Caltex Plan (or their predecessor plans) to any individual who ceased to be employed by Texaco Inc. or by Chevron Texaco Global Energy Inc. (or their subsidiaries) prior to July 1, 2002, and who is not employed as an Employee on or after such date, and the rights and obligations of any such individual with respect to such benefits, shall be determined under the terms of this Plan, the Texaco Plan or the Caltex Plan (as applicable) as in effect on the date such individual's employment terminated.

(*Id.*, Appendix at 11). Barrett relies on this language to argue that the ChevronTexaco Retirement Plan does not apply to him because his employment with Texaco Inc. ended on March 31, 1999.
    The record does not support Barrett's argument. The record shows that the Barrett accrued benefits under the Texaco Retirement Plan and that the Texaco Retirement Plan was merged into the ChevronTexaco Retirement Plan, effective July 1, 2002. The ChevronTexaco Retirement Plan states that for former Texaco employees like Barrett, the "*benefits* payable under the Texaco Plan" and "the *rights and obligations*" of beneficiaries "with respect to such benefits" will be determined "under the terms of the [plan] as in effect on the date such individual's employment terminated." (Docket Entry No. 14, Appendix at 11 (emphasis added)). Although the former Texaco Retirement Plan governs the *benefits* to which Barrett is entitled, the record shows that the ChevronTexaco Retirement Plan applies to Barrett and may serve as the basis for jurisdiction for this lawsuit.

properly belong to the Plan." (Docket Entry No. 14 at 3). ACS points out that the Chevron Retirement Plan names Chevron as the plan fiduciary with "authority to control and manage the operation and administration of the Plan." (*Id.* at 7). If a person "has received a payment from the Plan in excess of the amount to which such person is entitled under the provision of the Plan," the Chevron Retirement Plan allows Chevron, as the plan fiduciary, to "withhold the excess from one or more subsequent payments to such person" or to "employ any other lawful means to recover overpayments on behalf of the Plan." (*Id.*, Appendix at 55). ACS argues that Chevron and the Chevron Retirement Plan "delegated the duty to recover the overpayment to Barrett to ACS" through a subrogation agreement, which states as follows:

> Pursuant to this Subrogation Agreement, the parties agree that ACS will be subrogated to the rights of Chevron against the Plan Participants listed in Exhibit "A." The parties acknowledge that ACS intends to take all legal action necessary to recover the overpayments to the Plan Participants and monies recovered from the Plan Participants will be reimbursed to the Plan.

(*Id.*, Appendix at 92). ACS argues that "with respect to the claim against Defendant, ACS is an ERISA fiduciary with standing to pursue this claim for overpayment on behalf of the Plan." (*Id.* at 8).

Section 1132(a)(3) states as follows:

> (a) Persons empowered to bring a civil action
> A civil action may be brought--
> . . .

8

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

Section 1002(21)(a) defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. 1002(21)(a).

Section 1105(c)(1)(B) states:

> (c) Allocation of fiduciary responsibility; designated persons to carry out fiduciary responsibilities
>
> > (1) The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

29 U.S.C. 1105(c)(1)(B).

Barrett's argument that ACS is not a fiduciary because it does not "exercise discretionary authority and control that amounts to actual decision making power" is not supported by the law or the record. (Docket Entry No. 16 at 9). ERISA includes in its definition of a fiduciary "any person designated under section 1105(c)(1)(B) of this title." Section 1105(c)(1)(B) states that a plan may allow a named fiduciary to designate a third party to carry out fiduciary responsibilities under the plan. *See also Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 811 (7th Cir. 2006) ("Under ERISA, fiduciaries are allowed to designate other individuals 'to carry out fiduciary responsibilities . . . under the plan.'") (quoting 29 U.S.C. 1105(c)(1)(B)); *Lee v. MBNA Long Term Disability & Benefit Plan*, 136 Fed. Appx. 734, 742 (6th Cir. 2006) ("It is well established that an ERISA fiduciary may delegate its fiduciary responsibilities to either another named fiduciary or a third party if the plan establishes procedures for such delegation.").

The record shows that the ChevronTexaco Retirement Plan provides for such a delegation of fiduciary responsibilities. The ChevronTexaco Retirement Plan states:

> The Corporation may engage such attorneys, actuaries, accountants, consultants or other persons to render advice or to perform services with regard to its responsibilities under the Plan as it shall determine to be necessary or appropriate. By written instrument signed by both parties, the Corporation may designate one or more actuaries, accountants or consultants as fiduciaries to carry out, where appropriate, its fiduciary responsibilities under the Plan.

(Docket Entry No. 14, Appendix at 45). Under the subrogation agreement signed by both Chevron and ACS, "ACS will be subrogated to the rights of Chevron against the Plan Participants listed in Exhibit 'A.'" (*Id.*, Appendix at 92). Subrogation "is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." 83 C.J.S. *Subrogation* § 2 (2008). As Chevron's subrogee, ACS may assert the rights Chevron has against Barrett under the ChevronTexaco Retirement Plan, which include "employ[ing] any other lawful means to recover overpayments on behalf of the Plan." (Docket Entry No. 14, Appendix at 55).

Barrett's argument that the subrogation agreement "is not a Plan document" and is "not an amendment to the Plan" does not alter the analysis.[4] (Docket Entry No. 16 at 3). A Plan instrument need not "set forth an express delegation of authority" for a delegation of duties to be effective under section 1105(c)(1). *Concha v. London*, 62 F.3d 1493, 1501–02 (9th Cir. 1995); *see also Roberts v. Union Pac. R.R. Co.*, 16 Fed. Appx. 730, 733 (9th Cir. 2001). ERISA allows named fiduciaries to delegate responsibilities as long as the plan

---

[4] Barrett also objects to the admission of the subrogation agreement as an exhibit because "it does not meet the requirements of Rule 902(8) or (11) or 803(6) of the Federal Rules of Evidence for consideration or introduction as a record of regularly conducted activity." (Docket Entry No. 16 at 10). Accompanying the subrogation agreement is a declaration by Charles W. Schwartz, ACS's counsel, stating that "a true and correct copy of the Subrogration Agreement" is attached to ACS's response to Barrett's motion to dismiss. (Docket Entry No. 14, Appendix at 2). This declaration is sufficient to authenticate the agreement under Federal Rule of Evidence 901. The agreement is a document of independent legal significance and need not qualify as a record of regularly conducted activity under Rule 803(6), as Barrett argues. Barrett's evidentiary objections to the subrogation agreement are overruled.

11

provides the procedures by which the named fiduciary may designate third parties to carry out fiduciary responsibilities. *See Heller v. Cap Gemini Ernst & Young Welfare Plan*, 396 F. Supp. 2d 10, 19 (D. Mass. 2005) (noting that section 1105(c)(1) allows named fiduciaries to delegate responsibilities "*through express procedures* provided in the plan") (citing *Rodriguez-Abreu v. Chase Manhattan Bank*, 986 F.2d 580, 584 & n.6 (1st Cir. 1993)); *accord Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1097 (M.D. Ala. 2006) (refusing to find a delegation of fiduciary duties in part because "[t]he parties have not provided any portion of the LTD [long-term disability] plan which indicates that the plan expressly permits delegation of the duties of the plan administrator").

As the Chevron Retirement Plan's administrator, Chevron's fiduciary responsibilities involve "control and manage[ment]" of "the operation and administration of the Plan." (Docket Entry No. 14, Appendix at 43). The Chevron Retirement Plan gives Chevron the right to seek recovery of overpayments to plan beneficiaries. (*Id.*, Appendix at 55). The record shows that Chevron has designated ACS to carry out the fiduciary responsibility of recovering the overpayment to Barrett. Under ERISA section 1105(c)(1), ACS is a designated fiduciary with standing to sue for equitable relief under ERISA section 1132(a)(3).

B.   **Does ACS Seek Equitable Relief to Enforce a Plan Term?**

In its original complaint, ACS asserted a claim for restitution and sought "liquidated damages in the amount of at least $445,372.99." (Docket Entry No. 1 at 3). In their first amended complaint, ACS and Chevron reassert a restitution claim but instead of liquidated damages they seek "to impose a constructive trust and equitable lien on the overpayment of $445,372.99, wherever it may be traced or found, and to receive equitable restitution in the same amount to recoup the assets that rightfully belong to the Chevron [Retirement] Plan." (Docket Entry No. 25 at 4–5).

Barrett argues that ACS does not seek equitable relief under 29 U.S.C. 3302(a)(3) "based on any provision of the Chevron Retirement Plan," but instead seeks a legal remedy in the form of "liquidated damages." (Docket Entry No. 9 at 5). Citing *Philips v. Maritime Ass'n–I.L.A. Local Pension Plan*, 194 F. Supp. 2d 549 (E.D. Tex. 2001), Barrett also argues that the Chevron Retirement Plan is not entitled to recover any overpayment made to him because the plan administrator breached its fiduciary duty in making the payment, Barrett detrimentally relied on his right to the money, "the balance of equities, and the principles of restitution." (Docket Entry No. 16 at 7).

Chevron and ACS respond that "[r]estitution against a transferee of tainted plan assets is appropriate equitable relief under § 502(a)(3)" and that in pursuing this action, they are seeking to enforce a term of the Chevron Retirement Plan. (Docket Entry No. 14 at 8).

13

Citing *Sereboff v. Mid Atlantic Services, Inc.*, 547 U.S. 356, 362 (2006), Chevron and ACS argue that section 1132(a)(3) "authorizes restitution in the form of an equitable lien or constructive trust." (Docket Entry No. 26 at 6).

Chevron and ACS seek equitable relief under section 1132(a)(3). Courts have acknowledged that a fiduciary may seek equitable relief under section 1132(a)(3) to recover amounts overpaid to a plan beneficiary. *See, e.g.*, *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 547 (7th Cir. 2003) (noting that the Supreme Court "has now made clear that although an ERISA fiduciary . . . . may not sue a plan participant or plan beneficiary under ERISA unless it is seeking equitable relief, such relief includes . . . the imposition of a constructive trust claimed to be wrongfully withheld from the [fiduciary]" (internal citations omitted)); *Fregeau v. Life Ins. Co. of N. Am.*, 490 F. Supp. 2d 928, 931 (N.D. Ill. 2007) (denying plaintiff beneficiary's motion to dismiss defendant fiduciary's counterclaim to recover overpayment of long-term disability benefits on the ground that the fiduciary sought to recover on a lien on funds "advanced directly to plaintiff by defendant in excess of what plaintiff would be ultimately entitled"); *Schultz v. Progress Health, Life, and Disability Benefits Plan*, 481 F. Supp. 2d 594, 595 (S.D. Miss. 2007) (noting that "other courts of appeal have interpreted *Sereboff* to allow a plan fiduciary to pursue a claim to recover overpayments, even when the funds have been dissipated by the beneficiary" and finding that the fiduciary "has properly asserted a claim for equitable relief under ERISA" by

"identif[ying] a fixed share of the assets to which it is equitably entitled") (citing *Dillard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894 (8th Cir. 2006), *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006)); *IBEW-NECA Sw. Health and Benefit Fund v. Gurule*, 337 F. Supp. 2d 845, 849 (N.D. Tex. 2004) (finding that fiduciary who sought to recover overpayments to beneficiary sought "equitable relief in the form of a constructive trust and equitable reimbursement," such that "this action is therefore authorized under ERISA" and "the court has subject matter jurisdiction over this action").

In seeking to recover the overpayment made to Barrett, Chevron and ACS seek to impose an equitable lien or constructive trust on funds in Barrett's possession to enforce the term of the ChevronTexaco Retirement Plan that allows Chevron to recover overpayments on the plan's behalf. If a person "has received a payment from the Plan in excess of the amount to which such person is entitled under the provision of the Plan," the Chevron Retirement Plan allows Chevron, as the plan fiduciary, to "withhold the excess from one or more subsequent payments to such person" or to "employ any other lawful means to recover overpayments on behalf of the Plan." (Docket Entry No. 14, Appendix at 55).

Because Chevron and ACS are fiduciaries seeking equitable relief to enforce a term of the Chevron Retirement Plan under section 1132(a)(3), this court has subject-matter jurisdiction over this lawsuit.

## IV. Conclusion

Barrett's motion to dismiss for lack of subject-matter jurisdiction is denied.

SIGNED on July 28, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge