**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CHEVRON CORPORATION §<br>and ACS HR SOLUTIONS, LLC §<br>as Subrogee of Chevron Corporation §<br>and the Chevron Retirement Plan, §<br>§<br>Plaintiffs, §<br>§<br>VS. §<br>§<br>RICHARD L. BARRETT, §<br>§<br>Defendant. § | CIVIL ACTION NO. H-07-3257 |

**MEMORANDUM AND OPINION**

On July 28, 2008, this court denied Richard L. Barrett's motion to dismiss for lack of subject-matter jurisdiction. (Docket Entry No. 31). ACS HR Solutions, LLC ("ACS") sued Barrett, seeking equitable restitution of overpaid ERISA pension benefits under 29 U.S.C. § 1132(a)(3). In the motion to dismiss, Barrett asserted that ACS had no standing to sue under Section 1132(a)(3), which allows a fiduciary to bring a civil action to obtain "appropriate equitable relief" to enforce the terms of an ERISA plan. In the July 28, 2008 Memorandum and Opinion, this court held that subject-matter jurisdiction is present because ACS and Chevron Corporation are fiduciaries seeking equitable relief under 29 U.S.C. 1132(a)(3). Barrett filed a motion and amended motion for reconsideration, (Docket Entry Nos. 32, 35). Chevron and ACS responded, (Docket Entry No. 36). Based on the motion and response; the record; and the applicable law, this court denies Barrett's motion for reconsideration. The reasons are explained below.

**I.     Background**

The relevant factual and procedural background are detailed in this court's July 28, 2008 Memorandum and Opinion and only summarized here. Briefly, Barrett worked for the Texas–New Mexico Pipe Line Company from 1975 to 1990. In 1990, he transferred to the Texaco Pipe Line Company, where he worked until 1999. The amended complaint alleges that during his employment from 1975 to 1999, Barrett accrued 22.9167 years of retirement benefits under the Texas–New Mexico Retirement Plan and 1.25 years of retirement benefits under the Texaco Retirement Plan. Barrett asserts that he accrued 15.5 years of benefits under the Texas-New Mexico Plan and 8 years, 8 months with the Texaco Retirement Plan.

On April 1, 1999, Barrett's employment was transferred to the Equilon Pipeline Company, a joint enterprise of Texaco and Shell Oil Company. As a result of his transfer, the plan assets and accrued plan benefits of the Texas–New Mexico Retirement Plan, including Barrett's 22.9167 years of accrued benefits, were transferred to the Shell Oil Company Retirement Plan. From 1999 to 2003, Barrett accrued retirement benefits under the Shell Oil Company Retirement Plan but did not accrue retirement benefits under the Texaco Retirement Plan.

In July 2002, the Texaco Retirement Plan was merged into the ChevronTexaco Retirement Plan. On July 1, 2005, the ChevronTexaco Retirement Plan was restated and renamed the Chevron Retirement Plan, which is the successor to both the Texaco Retirement

Plan and the ChevronTexaco Retirement Plan.[1]  Chevron Corporation is the Chevron Retirement Plan's administrator.  ACS provides recordkeeping services for the Chevron Retirement Plan.

Barrett retired in 2003 and applied for benefits from the ChevronTexaco Retirement Plan.  ACS arranged for the ChevronTexaco Retirement Plan to pay Barrett a lump-sum retirement amount.  The amended complaint alleges that on October 31, 2003, Barrett was due retirement benefits amounting to $24,073.48 from the ChevronTexaco Retirement Plan for 1.25 years of service accrued under the former Texaco Retirement Plan.

The complaint alleges that due to an administrative error, Barnett instead received a lump-sum payment of $469,446.47, which incorrectly included credit for service that Barrett accrued under the Texas–New Mexico Retirement Plan.  Barrett argues that he accrued 8 years and 8 months of retirement benefits under the former Texaco Retirement Plan, not merely 1.25 years, and that he is entitled to more than $24,073.48 for his Texaco service.  In the amended complaint, Chevron and ACS allege that Barrett also received payment from the Shell Oil Company Retirement Plan for the retirement benefits he accrued under the Texas–New Mexico Retirement Plan.  Chevron and ACS assert that Barrett received an overpayment of $445,372.99 because he "improperly received double retirement benefits for his service."  (Docket Entry No. 25 at 4).

---

[1] The briefs, and this opinion, refer to the "ChevronTexaco Retirement Plan" and the "Chevron Retirement Plan" interchangeably.

ACS sued Barrett to recover the overpayment. ACS sued as the subrogee of Chevron Corporation and the Chevron Retirement Plan. (Docket Entry No. 1). Barrett moved to dismiss on the ground that ACS is not a "fiduciary" with standing to sue under 29 U.S.C. § 1132(a)(3). This court granted ACS leave to amend its complaint to add or substitute Chevron as a party. (Docket Entry No. 22). ACS filed an amended complaint adding Chevron as a party. (Docket Entry No. 25). Barrett then argued that Chevron and ACS's amended complaint "cannot supply jurisdiction where none attached as of date of filing on October 3, 2007." (Docket Entry No. 27 at 5). Barrett also argued that the Chevron Retirement Plan did not apply to his Texaco benefits because his employment with Texaco ended in 1999. He pointed to a provision of the Chevron Plan stating that "the rights and obligations of any such individual with respect to such benefits, shall be determined under the terms of this Plan, the Texaco Plan or the Caltex Plan (as applicable) as in effect on the date such individual's employment terminated." (Docket Entry No. 14, Appendix at 11).

This court denied Barrett's motion to dismiss. (Docket Entry No. 31). This court held that "[a]lthough the former Texaco Retirement Plan governs the *benefits* to which Barrett is entitled, the record shows that the ChevronTexaco Retirement Plan applies to Barrett and may serve as the basis for jurisdiction for this lawsuit." (*Id.*). The Chevron Retirement Plan gives Chevron, the plan administrator, the right to seek recovery of overpayments to plan beneficiaries. (Docket Entry No. 14, Appendix at 55). Acting under the Chevron Retirement Plan, Chevron designated ACS to carry out the fiduciary responsibility of recovering the overpayment to Barrett. This court held that Chevron and ACS seek equitable relief because

4

"[i]n seeking to recover the overpayment made to Barrett, Chevron and ACS seek to impose an equitable lien or constructive trust on funds in Barrett's possession to enforce the term of the ChevronTexaco Retirement Plan that allows Chevron to recover overpayments on the plan's behalf." (Docket Entry No. 31).

## II.     The Legal Standard

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). Because granting a Rule 59(e) motion is such an extraordinary remedy, the Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

## III.     Analysis

The primary basis for Barrett's motion for reconsideration is the same argument raised before this court ruled. Barrett argues that the Chevron Retirement Plan, under which ACS was designated as a fiduciary, does not apply to him and cannot serve as the basis for jurisdiction in this lawsuit. The ChevronTexaco Retirement Plan states in relevant part:

> Except as otherwise provided in a subsequent amendment or restatement of the relevant plan text, the benefits payable under this Plan to any individual who ceased to be an Employee prior to July 1, 2002, and the benefits payable under this Plan to any individual who ceased to be an Employee prior to July 1, 2002, and the benefits payable under the Texaco Plan or the Caltex Plan (or their predecessor plans) to any individual who ceased to be employed by Texaco Inc. or by Chevron Texaco Global Energy Inc. (or their subsidiaries) prior to July 1, 2002, and who is not employed as an Employee on or after such date, and the rights and obligations of any such individual with respect to such benefits, shall be determined under the terms of this Plan, the Texaco Plan or the Caltex Plan (as applicable) as in effect on the date such individual's employment terminated.

(Docket Entry No. 14, Appendix at 11). Barrett relies on this language to argue that the Chevron Retirement Plan does not apply to him because his employment with Texaco Inc. ended on March 31, 1999. Barrett urges that this court erred by concluding that the "ChevronTexaco Retirement Plan applies to Barrett and may serve as the basis for jurisdiction in this lawsuit." He claims that because ACS is not a fiduciary under the terms of the Texaco Plan, which governs his "benefits" and "rights and obligations," this court lacks subject-matter jurisdiction under Section 1132(a)(3).

Chevron and ACS argue that contrary to Barrett's contentions, his retirement benefits, rights, and obligations are not affected by whether Chevron delegates fiduciary duties. Chevron and ACS contend that even assuming that the Texaco Plan controls Barrett's benefits, that does not preclude an amendment to the ChevronTexaco Plan allowing Chevron to designate a fiduciary.

The terms of the ChevronTexaco Plan determine whether ACS is a fiduciary for purposes of this lawsuit. Because the Texaco Plan was merged into the ChevronTexaco Plan in 2002, benefits accrued under the Texaco Plan are administered under the terms of the ChevronTexaco Plan. The language quoted by Barrett means that the ChevronTexaco Plan cannot affect his accrued rights under the Texaco Plan or the amount of his benefits payable at retirement. Those "benefits" and Barrett's "rights and obligations" are fixed under the terms of the Texaco Plan. However, the administration of all benefits is conducted under the terms of the ChevronTexaco Plan. Under that Plan, Chevron's fiduciary responsibilities as Plan administrator involve "control and manage[ment]" of "the operation and administration of the Plan." (Docket Entry No. 14, Appendix at 43). As administrator, Chevron has the right to seek recovery of overpayments to plan beneficiaries. (*Id.*, Appendix at 55). The record shows that Chevron designated ACS to carry out the fiduciary responsibility of recovering the overpayment to Barrett. Under ERISA section 1105(c)(1), ACS is a designated fiduciary with standing to sue for equitable relief under ERISA section 1132(a)(3).

Barrett also asserts that the amended complaint was filed by ACS and Chevron over his opposition and without leave of court, as required by Rule 15(a)(2) of the Federal Rules of Civil Procedure. He argues that "[l]eave is normally sought by formal motions and orders submitted to the Court," none of which were present here. Barrett contends that because ACS did not seek leave of court to file an amended complaint, this court should have stricken the amended complaint and only considered whether the original complaint should be dismissed.

Barrett's contention is not supported by the record. At a hearing on April 15, 2008, this court granted ACS leave to file an amended complaint. (Docket Entry No. 22). In the amended complaint, ACS and Chevron reasserted a restitution claim but instead of liquidated damages they sought "to impose a constructive trust and equitable lien on the overpayment of $445,372.99, wherever it may be traced or found, and to receive equitable restitution in the same amount to recoup the assets that rightfully belong to the Chevron [Retirement] Plan." (Docket Entry No. 25 at 4–5).

Barrett also argues that this court did not consider *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), and *Amschwand v. Sperion*, 505 F.3d 342 (5th Cir. 2007). In *Amschwand*, the court concluded that "[u]nder *Great-West*, only the nature of the claim and the relief sought – not the status and the litigants – determine the scope of available [Section 1132(a)(3)] recovery." 505 F.3d at 347. The court further stated that "the remedy sought – here, restitution – must have been one typically awarded, not one that could have been awarded, by a court of equity." *Id.* Barrett asserts

8

that the original complaint sought monetary damages, not a typically equitable remedy. Barrett contends that even if ACS is a fiduciary, because the original complaint did not seek equitable relief, this court lacks subject-matter jurisdiction.

The *Amschwand* decision is inapplicable. In that case, the plaintiff beneficiary sought "recovery of extra-contractual, or 'make-whole,' damages in the form of payment of life insurance benefits that would have accrued to a plan beneficiary but for a plan fiduciary's breach of fiduciary duty." 505 F.3d at 343. The *Amschwand* court held that the remedy sought was not a "typically equitable" remedy. *Great-West* requires that the nature of the relief sought under Section 1132(a)(3) be typically available in equity – an injunction, mandamus, or restitution – and that the cause of action giving rise to the claim be generically equitable. 534 U.S. at 212. The *Amschwand* court held that although courts of equity sometimes award monetary damages against trustees for breaches of fiduciary duty, the monetary damages sought by the plaintiff were legal rather than equitable. 505 F.3d at 347. The defendant in *Amschwand* did not maintain the funds sought in its possession, which is "the key to awarding equitable restitution in the form of a constructive trust or equitable lien." *Id.* The plaintiff in *Amschwand* was seeking relief "–whether characterized as make-whole or restitutionary–that is legal in nature because it represents damages on the insurance contract that [defendant] allegedly breached." *Id.* at 347.

In their amended complaint, Chevron and ACS did not seek monetary damages. Instead, they sought to impose a constructive trust and equitable lien to recover the alleged overpayment. The amended complaint alleged that Barrett is in possession of funds in the

amount overpaid by the ChevronTexaco Plan.  As stated in the July 28, 2008 Memorandum and Opinion, equitable relief for purposes of Section 1132(a)(3) includes  recovery of amounts overpaid to a plan beneficiary.  *See Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 547 (7th Cir. 2003) (noting that the Supreme Court "has now made clear that although an ERISA fiduciary . . . . may not sue a plan participant or plan beneficiary under ERISA unless it is seeking equitable relief, such relief includes . . . the imposition of a constructive trust claimed to be wrongfully withheld from the [fiduciary]" (internal citations omitted)); *IBEW-NECA Sw. Health and Benefit Fund v. Gurule*, 337 F. Supp. 2d 845, 849 (N.D. Tex. 2004) (finding that fiduciary who sought to recover overpayments to beneficiary sought "equitable relief in the form of a constructive trust and equitable reimbursement," such that "this action is therefore authorized under ERISA" and "the court has subject matter jurisdiction over this action").

     Barrett also claims that the July 28, 2008 Memorandum and Opinion erroneously stated several facts. Barrett asserts that he accrued 15.5 years of benefits under the Texas-New Mexico Plan and 8 years, 8 months with the Texaco Retirement Plan, rather than the 22.9167 years and 1.25 years, respectively, stated in the Memorandum and Opinion.  He argues that he is entitled to more than $24,073.48 in retirement benefits from the former Texaco Retirement Plan.  Even assuming the truth of these statements, they do not affect whether ACS and Chevron are fiduciaries seeking equitable relief and do not affect this court's subject-matter jurisdiction.

Barrett also claims that he did not receive a lump-sum payment from the Chevron Retirement Plan, as stated in the Memorandum and Opinion, but that he received a wire transfer from Chevron-Texaco to an IRA. He asserts that because he was vested in the Texaco Retirement Plan, his benefits cannot be affected by asset transfers between Texaco and Shell after March 31, 1999. Barrett argues that any dispute between Chevron and Shell requires joining Shell to this lawsuit. Barrett also contends that this lawsuit is limited to consideration of the amount of benefits due him under the Texaco Retirement Plan. He argues that there is no need to bring the Texas-New Mexico Retirement Plan into this lawsuit because the applicable statute of limitations has expired and there are no disputes or claims between Barrett and the Texas-New Mexico Plan. These arguments address issues that will be developed as the case progresses. These arguments do not affect subject-matter jurisdiction or the disposition of the motion to dismiss.

**IV.   Conclusion**

Barrett has not pointed to an error of law or fact affecting subject-matter jurisdiction. His motion raises arguments made before the judgment issued that were rejected by this court. Barrett's motion for reconsideration is denied.

SIGNED on October 30, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge